# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| VB ASSETS, LLC,<br><br>       Plaintiff,<br><br>   v.<br><br>SAMSUNG ELECTRONICS CO., LTD. and<br>SAMSUNG ELECTRONICS AMERICA, INC,<br><br>       Defendants. | C.A. No.  2:24-cv-828   <br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff VB Assets, LLC ("Plaintiff" or "VoiceBox") brings this Complaint against defendants Samsung Electronics Co., Ltd. ("SEC") and Samsung Electronics America, Inc. ("SEA") (collectively, "Defendants" or "Samsung") and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

**NATURE OF THE ACTION**

1.      VoiceBox, through its predecessor companies VoiceBox Technologies Corporation and VoiceBox Technologies, Inc. (collectively "VoiceBox Technologies"), pioneered voice-based natural language understanding and artificial intelligence technology.  In recognition of their many innovations, the U.S. Patent & Trademark Office awarded and issued the VoiceBox Patents, which include United States Patent Nos. 8,073,681 ("the '681 patent"); 8,515,765 ("the '765 patent"); 10,510,341 ("the '341 patent"); 10,755,699 ("the '699 patent"); 7,818,176 ("the '176 patent"); and 8,886,536 ("the '536 Patent").  The innovations in the VoiceBox Patents are fundamental to the development of voice assistants.

2.      Beginning in 2013, VoiceBox Technologies supplied Natural Language Understanding ("NLU") technology to Samsung in a cooperative business partnership.  Using the NLU technology, Samsung was able to release its first voice assistant for Samsung smartphones.  During the negotiations leading up to the partnership, and after, Samsung repeatedly expressed interest in buying or licensing the VoiceBox Patents.  But eventually, Samsung chose to terminate the partnership and willfully infringe the VoiceBox Patents with its release of Bixby 2.0 Products[1] in 2018.  While Samsung may have cut VoiceBox Technologies out of its commercial plans, Samsung never secured the right to use the VoiceBox Patents in Bixby 2.0.

3.      VoiceBox has brought this case to hold Samsung accountable for its willful infringement of VoiceBox's patent rights.  VoiceBox seeks all available relief under the patent

---

[1] "Bixby 2.0 Products" collectively refers to Samsung's second generation voice assistant, called "Bixby 2.0" at launch and offerings that include Bixby 2.0, including: the Galaxy Note 9 smartphone, and all versions of the Galaxy S, Galaxy Note,  Galaxy Fold, Z Fold, and Z Flip smartphones released after the Note 9; Galaxy A smartphones, Galaxy tablets, Galaxy earbuds, Galaxy smartwatches, Samsung smart TVs, Family Hubs, other Samsung appliances, and Samsung sound bars that included Bixby 2.0 at launch or were later upgraded to include Bixby 2.0; as well as the cloud infrastructure that implements Bixby 2.0.

laws of the United States, 35 U.S.C. § 100 et. Seq., including monetary damages for Samsung's infringement, enhanced damages for willful infringement, and VoiceBox's attorneys' fees.

## THE PARTIES

4.      VB Assets, LLC is a limited liability company organized under the laws of Delaware and has its principal place of business at 1229A 120th Avenue NE, Bellevue, WA 98005. VoiceBox is the owner of the entire right, title, and interest of the VoiceBox Patents, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

5.      On information and belief, SEC is a Korean corporation with its principal place of business at 129 Samsung-Ro Yeongtong-gu, Gyeonggi-do 16677 Suwon-Shi, Republic of Korea. SEC may be served pursuant to at least Fed. R. Civ. P. 4(f)(1).

6.      On information and belief, SEC is responsible for the design, manufacture, and sale of Samsung smartphones, tablets, wearables, and other internet-enabled mobile devices that operate on cellular networks in the United States and around the world.

7.      On information and belief, SEA is a corporation organized and existing under the laws of the State of New York with its principal place of business at 85 Challenger Road, Ridgefield Park, New Jersey 07660.  SEA is a wholly owned subsidiary of SEC.

8.      On information and belief, SEA is and has been registered to do business in the State of Texas since at least June 10, 1996. SEA may be served in Texas at least via its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, TX 75201.

9.      On information and belief, SEA oversees domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

10.    On information and belief, SEC exercises direction and control over SEA's oversight of domestic sales and distribution of Samsung's consumer electronics products, including the products accused of infringement in this case.

11.    SEC and SEA, individually and collectively as a common business enterprise, conduct business operations in this District, including at corporate facilities located at 6625 Excellence Way, Plano, TX 75023; 6555 Excellence Way, Plano, TX 75023; 2601 Preston Rd., Frisco, TX 75023; 1005 Placid Ave #120, Plano, TX 75074; 1303 East Lookout Drive, Richardson, Texas 75082; and 2800 Technology Drive, Suite 200, 8 Plano, Texas 75074, among others.

12.    SEA employs full-term personnel such as sales personnel and engineers in this District.

13.    Samsung sells and offers for sale products pertinent to this Complaint to customers in this District and throughout the states of Texas at its Samsung Experience Store at 2601 Preston Road, Frisco, TX 75034, as well as through its website, www.samsung.com/us/.

14.    Samsung has authorized sellers and sales representatives that offer and sell products pertinent to this Complaint throughout the State of Texas, including in this District, and to consumers throughout this District, such as: Best Buy, 422 West TX-281 Loop, Suite 100, Longview, TX 75605; AT&T Store, 1712 East Grand Avenue, Marshall, TX 75670; T-Mobile, 1806 East End Boulevard North, Suite 100, Marshall, TX 75670; Verizon authorized retailers, including Russell Cellular, 1111 East Grand Avenue, Marshall, TX 75670; Victra, 1006 East End Boulevard, Marshall, TX 75670; and Cricket Wireless authorized retailer, 120 East End Boulevard South, Marshall, TX 75670.

4

**JURISDICTION AND VENUE**

15.    This is an action for patent infringement arising under the Patent Laws of the United States, 35 U.S.C. §§ 100, et seq., including 35 U.S.C. § 271.

16.    This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a) because the action arises under the patent laws of the United States.

17.    This Court has general and specific personal jurisdiction over Defendants because, Defendants have committed acts, directly or through intermediaries, in this District, giving rise to this action; are present in and transact and conduct business in this District and the State of Texas; and transact and conduct business with residents of this District and the State of Texas.

18.    VoiceBox's claims arise, at least in part, from Defendants' contacts with and activities in this District and the State of Texas.

19.    Defendants have infringed the VoiceBox Patents within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products that infringe the VoiceBox Patents, including, without limitation, products that practice the claimed methods of the VoiceBox Patents or include the claimed apparatuses of the VoiceBox Patents. Defendants, directly and through intermediaries, make, use, sell, offer for sale, import, ship, distribute, advertise, promote, and/or otherwise commercialize such infringing products in or into this District and the State of Texas. Defendants regularly conduct and solicit business in, engage in other persistent courses of conduct in, and/or derive substantial revenue from goods and services provided to residents of this District and the State of Texas.

20.    This Court has personal jurisdiction over Defendants pursuant to Tex. Civ. Prac. & Rem. Code § 17.041 *et seq.*

21.     Personal jurisdiction exists over Defendants at least because Defendants have minimum contacts with this forum as a result of business regularly conducted within this District and the State of Texas, and, on information and belief, specifically as a result of, at least, committing acts of patent infringement within this District and the State of Texas.

22.     This Court also has personal jurisdiction over Defendants, in part, because Defendants each do continuous and systematic business in this District, including by providing infringing products and services to the residents of this District that Defendants knew would be used within this District, and by soliciting business from the residents of this District.

23.     For example, Defendants are subject to personal jurisdiction in this Court because Defendants, themselves and/or through agents, regularly solicit and transact business in this District and have an established place of business in this District. Accordingly, this Court's jurisdiction over the Defendants comports with the constitutional standards of fair play and substantial justice and arises directly from Defendants' purposeful minimum contacts with the State of Texas.

24.     This Court also has personal jurisdiction over Defendants because Defendants have made their products available for, at least, purchase and use within this District.

25.     Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1400(b).

26.     For example, both SEC and SEA maintain a regular and established place of business in this District at 6625 Excellence Way, Plano, TX 75023 and have committed acts of infringement in this District, including sales of infringing products within this District.

27.     Additionally, venue is proper as to SEC, a foreign corporation, because suits against foreign entities are proper in any judicial district under 28 U.S.C. § 1391(c)(3).

## BACKGROUND

**A.      VoiceBox Technologies Invents Groundbreaking Voice Technology**

28.      In 2001, three brothers—Mike, Rich, and Bob Kennewick—founded VoiceBox Technologies to bring voice-based natural language understanding ("NLU") to a wide array of computer applications.  They recognized that the typical computer speech-recognition systems forced human operators to adhere to a limited number of rigid speech prompts.  These rigid prompts limited how systems were used and inhibited the widespread adoption of speech-recognition systems.  The brothers believed that VoiceBox Technologies could become the first company to enable people to naturally and effectively interact with computer speech systems.

29.      From its inception, VoiceBox Technologies engaged in intense research efforts to develop its NLU technology.  As part of these efforts, VoiceBox Technologies achieved a significant milestone when it developed an early prototype called "Cybermind."  As demonstrated on the King5 news, Cybermind was a voice-controlled speaker that could provide weather, recipes, sports scores, calendar updates, or play a song.[2]



**Figure 1: Cybermind Prototype**

---

[2] https://www.youtube.com/watch?v=DDcRyPnvWhw.

7

30.    VoiceBox Technologies' groundbreaking work did not go unrecognized.  After learning about VoiceBox Technologies' technology, Toyota hired it to build a sophisticated NLU speech interface for its Lexus automobiles. VoiceBox Technologies built the voice and NLU capability for Toyota's award-winning Entune multimedia system.

31.    As part of the development effort of an NLU interface for Lexus, VoiceBox Technologies demonstrated a personal assistant called "Alexus" that showcased the power of its Conversational Voice technology.



**Figure 2: "Alexus" Demonstration**

32.    Throughout its research and development efforts, VoiceBox Technologies realized that its technology could be deployed in a wide range of applications from connected home to mobile personal assistants.





**Figure 3: Connected Home**              **Figure 4: Mobile**

33.     By January 2012, VoiceBox Technologies was a leader in NLU and conversational voice technology.  Leading companies throughout the world, including Toyota, Lexus, TomTom, Pioneer, Chrysler, Dodge, and Magellan used VoiceBox Technologies' award-winning and patented contextual speech technology.  VoiceBox Technologies had software applications that ran on smart speakers, in-car systems, smartphones, smart TVs, computers, tablets, e-readers, and personal navigation devices.

34.     In 2013, the Institute of Electrical and Electronics Engineers (IEEE) ranked VoiceBox Technologies number 13 in patent power for the computer software industry.[3] VoiceBox Technologies had become a leader in conversational Artificial Intelligence ("AI"), including Voice Recognition, NLU, and AI services.[4]

35.     As illustrated in the following company photograph, VoiceBox Technologies had invested in a large team of engineers, scientists, linguists, and other personnel—and was, at that time, optimistic about its technology and its future.



---

[3] *See* https://web.archive.org/web/20210925234339/https://spectrum.ieee.org/patent-power-2013.

[4] *See* https://www.databricks.com/company/newsroom/press-releases/voicebox-accelerates-voice-recognition-innovations-with-databricks-unified-analytics-platform.

### B.    Samsung Takes VoiceBox's Technology

36.    On information and belief, Samsung has known for more than 12 years that VoiceBox's technology and patents are critical to voice assistants, like the infringing Bixby 2.0 Products.  In or around 2012, Samsung approached VoiceBox Technologies through a patent broker to make an offer to buy some of VoiceBox Technologies' award-winning patent portfolio. Around this time, VoiceBox Technologies was already engaged in negotiations with Samsung about a partnership to develop a voice assistant for Samsung phones.  VoiceBox Technologies recognized that its patents were worth much more than Samsung's opening offer, so VoiceBox Technologies responded by asking Samsung to focus on the parallel negotiations for a partnership between the two companies, which would allow both sides to reap the rewards of the technology and patents developed by VoiceBox Technologies.

37.    As the negotiations progressed over approximately the next nine months, on information and belief, Samsung realized a partnership with VoiceBox Technologies could help Samsung enter the voice assistant market because VoiceBox Technologies could supply the critical NLU technology to power a Samsung-branded voice assistant.  These negotiations culminated in a partnership where VoiceBox Technologies supplied the NLU for Samsung's first voice assistant—called "S Voice."  The parties executed an agreement governing this partnership in or around June 2013.  In 2016, after working towards the shared goal for about three years, VoiceBox Technologies issued a press release announcing the "strategic partnership with Samsung to use VoiceBox's Natural Language Understanding (NLU) technology for Samsung's voice services."[5] In the press release, Samsung's Senior Vice President for Samsung Mobile, Peter Koo, offered a

---

[5] https://www.prnewswire.com/news-releases/voicebox-provides-natural-language-understanding-technology-for-samsung-mobile-devices-300221995.html.

quote emphasizing that Samsung knew how important—"critical" even—the technology was for Samsung:

> "Samsung understands that voice is a critical technology for its future. We are pleased to partner with VoiceBox and this collaboration will enable us to provide users with a powerful voice experience,"[6]

38.     Meanwhile, while the parties were negotiating the partnership, Samsung repeatedly tried to buy or license the VoiceBox Patents but never made an offer that came close to approaching the true value of the patents.  By December 2012, Samsung had offered to buy the '681 patent and license the remaining patents owned by VoiceBox Technologies at the time, including the VoiceBox Patents.  Samsung was initially adamant that it would not increase the amount it was willing to pay on a per-patent basis.  Over the course of the negotiations, however, Samsung offered more, and more, and more, per patent, evincing Samsung's understanding, on information and belief, that the award-winning VoiceBox Patents were of special importance to Samsung's business plans.  Still, Samsung's offers never came close to a commercially reasonable offer to buy or license the VoiceBox patents.

39.     During the partnership with Samsung, VoiceBox Technologies' patents were generating interest from other prominent technology companies.  Accordingly, VoiceBox Technologies sold some of its patents to another company in 2015, but retained the VoiceBox Patents.  In a February 2, 2015 email, VoiceBox Technologies' personnel confirmed that the VoiceBox Patents are "the patents that VoiceBox feels are most valuable to future business and represent the most significant claims."  Indeed around this time, other companies had made substantial monetary offers to buy the VoiceBox Patents.

---

[6] *Id.*

40.    VoiceBox Technologies' NLU was key to the S Voice services that launched on the Samsung Galaxy Note 7.    However—for reasons completely unrelated to VoiceBox Technologies—Samsung recalled[7] and then discontinued[8] the Note 7 due to exploding batteries in or around October 2016.    Around this time, VoiceBox Technologies employed more than 300 people and had to lay off employees due to Samsung's decision to discontinue the Note 7.[9] VoiceBox Technologies had held up its end of the bargain by delivering NLU technology to power Samsung's S Voice on the Note 7 and other phones.    However, Samsung, on information and belief, was preparing to wind down the partnership and design its own voice assistant after having access to VoiceBox Technologies' critical NLU technology.

41.    On information and belief, Samsung secretly prepared to willfully infringe the VoiceBox Patents during development of the second version of its voice assistant, dubbed Bixby 2.0 (On information and belief, the original Bixby, or Bixby 1.0, was based on the S Voice technology that VoiceBox Technologies had supplied).    Samsung's plans became public on or around October 18, 2017, when Samsung announced the infringing Bixby 2.0 voice assistant,[10] which was set to debut on the Samsung Galaxy Note 9 smartphone.[11]    Samsung explains on its website: "Bixby 2.0 is a voice recognition technology developed through collaboration between Samsung's AI technology & VIV."[12]    With Bixby 2.0, Samsung had cut VoiceBox Technologies

---

[7] https://pages.samsung.com/us/note7/recall/index.jsp.

[8] https://www.reuters.com/article/us-samsung-elec-smartphones-idUSKCN12A2JH/.

[9] https://www.geekwire.com/2017/samsung-partner-voicebox-technologies-makes-major-job-cuts-note-7-discontinuation/.

[10] https://news.samsung.com/us/bixby-2-next-paradigm-shift-in-devices/.

[11] https://www.theverge.com/2018/8/9/17670654/samsung-galaxy-note-9-bixby-2-assistant-features-uber-unpacked-event-2018.

[12] https://www.samsung.com/in/support/mobile-devices/galaxy-note9-what-is-bixby-20-and-how-does-it-differ-from-bixby-10/.

out of its commercial plans but had not secured any rights to use the VoiceBox Patents in Bixby 2.0.

42.    Shortly after Samsung announced Bixby 2.0, VoiceBox contacted Samsung to explore whether Samsung was interested in buying the VoiceBox Patents.  Around this time, VoiceBox Technologies confirmed its belief in a November 3, 2017 email that the VoiceBox Patents "can potentially generate hundreds of millions of dollars a year in license fees."  Samsung declined to buy or license the VoiceBox Patents and charged forward with its plans to release its infringing Bixby 2.0.  On or around August 9, 2018, Samsung launched Bixby 2.0 on the Note 9 without any rights under the VoiceBox Patents.  Samsung continues to offer its infringing Bixby 2.0 Products to this day—despite having no authorization to use the VoiceBox Patents.

C.    The VoiceBox Patents

43.    The inventions contained in the VoiceBox Patents in this case relate to groundbreaking improvements to voice recognition and NLU and have particular application in consumer electronics such as smart phones, tablets, and other smart devices.

44.    The '681 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on December 6, 2011, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors.  A true and correct copy of the '681 patent is attached hereto as **Exhibit A**.

45.    The '681 patent claims, among other things, a system for providing a cooperative conversational voice user interface, comprising: a voice input device configured to receive an utterance during a current conversation with a user, wherein the utterance includes one or more words that have different meanings in different contexts; and a conversational speech engine,

wherein the conversational speech engine includes one or more processors configured to: accumulate short-term shared knowledge about the current conversation, wherein the short-term shared knowledge includes knowledge about the utterance received during the current conversation; accumulate long-term shared knowledge about the user, wherein the long-term shared knowledge includes knowledge about one or more past conversations with the user; identify a context associated with the utterance from the short-term shared knowledge and the long-term shared knowledge; establish an intended meaning for the utterance within the identified context to disambiguate an intent that the user had in speaking the one or more words that have the different meanings in the different contexts; and generate a grammatically or syntactically adapted response to the utterance based on the intended meaning established within the identified context (claim 25).

46.    VoiceBox is the assignee of the entire right, title, and interest in the '681 patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

47.    The '765 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on August 20, 2013, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors.  A true and correct copy of the '765 patent is attached hereto as **Exhibit B**.

48.    The '765 patent claims, among other things, a system for providing a voice interface, comprising: a speech engine configured to receive a natural language utterance from a voice-enabled device, the natural language utterance corresponding to a conversation type, wherein the speech engine includes a processor configured to: determine the conversation type corresponding to the natural language utterance based on whether a user that spoke the natural

14

language utterance has a leader role in an interaction with the voice-enabled device or has a supporter role in the interaction with the voice enabled device; a response builder configured to generate a response to the natural language utterance with a format based on the conversation type, wherein the format is adapted to limit the user's future input to interjecting queries or requests for clarification if the user has the supporter role (claim 10).

49. VoiceBox is the assignee of the entire right, title, and interest in the '765 patent. including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

50. The '341 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on December 17, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors. A true and correct copy of the '341 patent is attached hereto as **Exhibit C**.

51. The '341 patent claims, among other things, A system for facilitating natural language system responses utilizing accumulated short-term and long-term knowledge, the system comprising: one or more physical processors programmed with one or more computer program instructions which, when executed, configure the one or more physical processors to: accumulate short-term knowledge based on one or more natural language utterances received during a predetermined time period; expire one or more items of short-term knowledge that are based on one or more natural language utterances received prior to the predetermined time period; accumulate long-term knowledge based on one or more natural language utterances received prior to the predetermined time period, wherein the long-term knowledge includes at least one of the one or more expired items of short-term knowledge; receive a first natural language utterance via

an input device; determine a first context for the first natural language utterance based on the short-term knowledge and the long-term knowledge; determine an interpretation of the first natural language utterance based on the first context; and generate a first response to the first natural language utterance based on the interpretation (claim 10).

52.    VoiceBox is the assignee of the entire right, title, and interest in the '341 patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

53.    The '699 patent, entitled "SYSTEM AND METHOD FOR A COOPERATIVE CONVERSATIONAL VOICE USER INTERFACE," was duly and legally issued on December 17, 2019, and names Larry Baldwin, Tom Freeman, Michael Tjalve, Blane Ebersold, and Chris Weider as the inventors.  A true and correct copy of the '341 patent is attached hereto as **Exhibit D**.

54.    The '699 patent claims, among other things, "A system for generating natural language system responses adapted based on a user's manner of speaking, the system comprising: one or more physical processors programmed with one or more computer program instructions which, when executed, configure the one or more physical processors to: receive a user input comprising a natural language utterance; recognize one or more words or phrases from the natural language utterance; identify a context for the natural language utterance based on the one or more words or phrases recognized from the natural language utterance; determine an interpretation of the natural language utterance based on the identified context; accumulate short-term knowledge based on one or more natural language utterances received during a predetermined time period, wherein the one or more natural language utterances received during the predetermined time period are related to a single conversation between a user and the computer system; accumulate long-term

16

knowledge, wherein the long-term knowledge is accumulated based on one or more natural language utterances received prior to the predetermined time period; identify a manner in which the natural language utterance was spoken based on the short-term knowledge and the long-term knowledge; and generate a response to the natural language utterance based on the interpretation and the identified manner in which the natural language utterance was spoken" (claim 12).

55.     VoiceBox is the assignee of the entire right, title, and interest in the '699 patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

56.     The '176 patent, entitled "SYSTEM AND METHOD FOR SELECTING AND PRESENTING ADVERTISEMENTS BASED ON NATURAL LANGUAGE PROCESSING OF VOICE-BASED INPUT," was duly and legally issued on October 19, 2010, and names Tom Freeman and Mike Kennewick as the inventors.  A true and correct copy of the '176 patent is attached hereto as **Exhibit E**.

57.     The '176 patent claims, among other things, "A system for selecting and presenting advertisements in response to processing natural language utterances, comprising: an input device that receives a natural language utterance containing at least one request at an input device; a speech recognition engine coupled to the input device, wherein the speech recognition engine recognizes one or more words or phrases in the natural language utterance, wherein to recognize the words or phrases in the natural language utterance, the speech recognition engine is configured to: map a stream of phonemes contained in the natural language utterance to one or more syllables that are phonemically represented in an acoustic grammar; and generate a preliminary interpretation for the natural language utterance from the one or more syllables, wherein the preliminary interpretation generated from the one or more syllables includes the recognized words

17

or phrases; a conversational language processor coupled to the speech recognition engine, wherein the conversational language processor is configured to: interpret the recognized words or phrases, wherein interpreting the recognized words or phrases includes establishing a context for the natural language utterance; select an advertisement in the context established for the natural language utterance; and present the selected advertisement via an output device" (claim 27).

58.     VoiceBox is the assignee of the entire right, title, and interest in the '176 patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

59.     The '536 patent, entitled "SYSTEM AND METHOD FOR DELIVERING TARGETED ADVERTISEMENTS AND TRACKING ADVERTISEMENT INTERACTIONS IN VOICE RECOGNITION CONTEXTS," was duly and legally issued on November 11, 2014, and names Tom Freeman and Mike Kenn[e]wick[13] as the inventors.  A true and correct copy of the '536 patent is attached hereto as **Exhibit F**.

60.     The '536 patent claims, among other things, " A system for providing promotional content related to one or more natural language utterances and/or responses, the system comprising: one or more physical processors programmed to execute one or more computer program instructions which, when executed, cause the one or more physical processors to: receive a first natural language utterance; provide a response to the first natural language utterance; receive a second natural language utterance relating to the first natural language utterance; identify one or more requests associated with the second natural language utterance; determine that at least one request of the one or more requests is incomplete or ambiguous; determine promotional content that relates to the one or more requests; present the promotional content to a user; monitor

18

interaction of the user with the promotional content; and interpret the at least one incomplete or ambiguous request based on the interaction" (claim 38).

61.    VoiceBox is the assignee of the entire right, title, and interest in the '536 patent, including the right to sue for and collect past, present, and future damages and to seek and obtain injunctive or any other relief for infringement.

## COUNT 1: INFRINGEMENT OF THE '681 PATENT

62.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

63.    Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '681 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby 2.0 Products, which embody or use the inventions of the '681 patent in violation of 35 U.S.C. § 271(a).   Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 25) to Bixby 2.0 Products can be found in **Exhibit G**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

64.    Additionally, on information and belief, Samsung knew of the existence of the '681 patent by sometime around December 2012 or before.   On December 6, 2011, the '681 patent issued listing VoiceBox Technologies as the assignee.   Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some or all of the VoiceBox Patents.   By around December 2012, Samsung had offered to buy the '681 patent and license the rest of the VoiceBox Patents.   Samsung has known of, or been willfully blind to, the existence of the '681 patent since no later than around December 2012.   Since before Samsung announced Bixby 2.0 on October 18, 2017, Samsung has known or been willfully blind

19

to the facts that the Bixby 2.0 Products infringe the '681 patent, that Samsung directly infringes the '681 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

65. Additionally, the '681 patent was cited during prosecution of one or more patents assigned to Samsung, including U.S. Patent No. 10,891,968. The '681 patent was cited during prosecution of one or more patents assigned to Samsung no later than April 25, 2018, the date it was cited during prosecution of Samsung's U.S. Patent No. 10,891,968. On information and belief, Samsung has also known of, or been willfully blind to, the existence of the '681 patent since no later than April 25, 2018. No later than that date, on information and belief, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '681 patent, that Samsung directly infringes the '681 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

66. Additionally, Samsung has actual notice that the Bixby 2.0 Products infringe the '681 patent at least as of the date of the filing of this Complaint. No later than that date, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '681 patent, that Samsung directly infringes the '681 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

67. Samsung has been and is inducing infringement of the '681 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '681 patent in violation of 35 U.S.C. § 271(b). On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner. Samsung causes Bixby 2.0 Products to be made available through its own website. Samsung also profits from third parties

20

who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

68.     Samsung has been and is continuing to contributorily infringe the '681 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '681 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

69.     VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '681 patent to the extent that any patented article is subject to a duty to mark.

70.     Samsung's infringement has been, and continues to be knowing, intentional, and willful.

71.     Samsung's acts of infringement of the '681 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

72.     This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

**COUNT 2: INFRINGEMENT OF THE '765 PATENT**

73.     VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

74.     Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '765 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby Products, which embody or use the inventions of the '765 patent in violation of 35 U.S.C. § 271(a).  Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 10) to Bixby 2.0 Products can be found in **Exhibit H**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

75.     Additionally, on information and belief, Samsung knew of, or was willfully blind to, the existence of the '765 patent by sometime around August of  2013.  The '765 patent was filed as a continuation of the '681 patent on October 3, 2011.  The application leading to the '765 patent published as U.S. Pat. Pub. No. 2012/0022857 on January 26, 2012, listing the '681 patent as a priority application.  Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some, or all, of the VoiceBox Patents.  By December 2012, Samsung had offered to buy the '681 patent and license the rest of the VoiceBox Patents.  The '765 patent issued on August 20, 2013.  In information and belief, since before Samsung announced Bixby 2.0 on October 18, 2017, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '765 patent, that Samsung directly infringes the '765 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

76.     Additionally, the '765 patent's parent patent (the '681 patent) was cited during prosecution of one or more patents assigned to Samsung, including  U.S. Patent No. 10,891,968.

22

The '681 patent was cited during prosecution of one or more patents assigned to Samsung no later than April 25, 2018, the date it was cited during prosecution of Samsung's U.S. Patent No. 10,891,968. On information and belief, Samsung has known of, or been willfully blind to, the existence of the '765 patent since no later than April 25, 2018. No later than that date, on information and belief, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '765 patent, that Samsung directly infringes the '765 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

77.     Additionally, Samsung has actual notice that the Bixby 2.0 Products infringe the '765 patent at least as of the date of the filing of this Complaint. No later than that date, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '765 patent, that Samsung directly infringes the '765 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

78.     Samsung has been and is inducing infringement of the '765 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '765 patent in violation of 35 U.S.C. § 271(b). On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner. Samsung causes Bixby 2.0 Products to be made available through its own website. Samsung also profits from third parties who sell Bixby 2.0 Products. Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

79.     Samsung has been and is continuing to contributorily infringe the '765 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '765 patent and not a staple article or commodity of

23

commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

80.     VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '765 patent to the extent that any patented article is subject to a duty to mark.

81.     Samsung's infringement has been, and continues to be knowing, intentional, and willful.

82.     Samsung's acts of infringement of the '765 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

83.     This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## COUNT 3: INFRINGEMENT OF THE '341 PATENT

84.     VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

85.     Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '341 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby 2.0 Products, which embody or use the inventions of the '341 patent in

24

violation of 35 U.S.C. § 271(a).  Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 10) to Bixby 2.0 Products can be found in **Exhibit I**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

86.    Additionally, on information and belief, Samsung knew of or was willfully blind to the existence of the '341 patent by sometime around December 2019.  Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some or all of the VoiceBox Patents.  By December 2012, Samsung had offered to buy the '681 patent and license the rest of the VoiceBox Patents.  Additionally, the '341 patent's ultimate parent patent (the '681 patent) was cited during prosecution of one or more patents assigned to Samsung, including U.S. Patent No. 10,891,968.  The '681 patent was cited during prosecution of one or more patents assigned to Samsung no later than April 25, 2018, the date it was cited during prosecution of Samsung's U.S. Patent No. 10,891,968.  The '341 patent was filed on August 29, 2019, claiming priority (through other family members) back to the '681 patent. The '341 patent issued on December 19, 2019, listing the '681 patent as a priority application.  No later than that date, on information and belief, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '341 patent, that Samsung directly infringes the '341 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

87.    Additionally, Samsung has actual notice that the Bixby 2.0 Products infringe the '341 patent at least as of the date of the filing of this Complaint.  No later than that date, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '341 patent,

that Samsung directly infringes the '341 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

88.     Samsung has been and is inducing infringement of the '341 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '341 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

89.     Samsung has been and is continuing to contributorily infringe the '341 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '341 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

90.     VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '341 patent to the extent that any patented article is subject to a duty to mark.

91.   Samsung's infringement has been, and continues to be knowing, intentional, and willful.

92.   Samsung's acts of infringement of the '341 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

93.   This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

### COUNT 4: INFRINGEMENT OF THE '699 PATENT

94.   VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

95.   Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '699 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby 2.0 Products, which embody or use the inventions of the '699 patent in violation of 35 U.S.C. § 271(a).   Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 12) to Bixby 2.0 Products can be found in **Exhibit J**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

96.   Additionally, on information and belief, Samsung knew of or was willfully blind to the existence of the '699 patent by August 25, 2020.  Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some or all of the VoiceBox Patents.  By December 2012, Samsung had offered to buy the '699 patent's ultimate parent patent (the '681 patent) and license the rest of the VoiceBox Patents.  Additionally, the '699 patent's ultimate parent patent (the '681 patent) was cited during prosecution of one or

more patents assigned to Samsung, including U.S. Patent No. 10,891,968.  The '681 patent was cited during prosecution of one or more patents assigned to Samsung no later than April 25, 2018, the date it was cited during prosecution of Samsung's U.S. Patent No. 10,891,968.  The '699 patent was filed on May 20, 2019, claiming priority (through other family members) back to the '681 patent.  The application leading to the '699 patent published as U.S. Pat. Pub. No. 2019/0272823 on September 5, 2019, listing the '681 patent as a priority application.  The '699 patent issued on August 25, 2020, listing the '681 patent as a priority application.  No later than that date, on information and belief, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '699 patent, that Samsung directly infringes the '699 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

97.    Additionally, Samsung has actual notice that the Bixby 2.0 Products infringe the '699 patent at least as of the date of the filing of this Complaint.  No later than that date, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '699 patent, that Samsung directly infringes the '699 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

98.    Samsung has been and is inducing infringement of the '699 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '699 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

99.    Samsung has been and is continuing to contributorily infringe the '699 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '699 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

100.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '699 patent to the extent that any patented article is subject to a duty to mark.

101.    Samsung's infringement has been, and continues to be knowing, intentional, and willful.

102.    Samsung's acts of infringement of the '699 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

103.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

### COUNT 5: INFRINGEMENT OF THE '176 PATENT

104.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

105.    Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '176 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby 2.0 Products, which embody or use the inventions of the '176 patent in violation of 35 U.S.C. § 271(a).  Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 27) to Bixby 2.0 Products can be found in **Exhibit K**. VoiceBox anticipates identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

106.    Additionally, on information and belief, Samsung knew of the existence of the '176 patent by sometime around December 2012 or before.  On October 19, 2010, the '176 patent issued listing VoiceBox Technologies as the assignee.  Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some or all of the VoiceBox Patents.  By December 2012, Samsung had offered to buy the '681 patent and license the rest of the VoiceBox Patents.  On information and belief, Samsung has known of, or been willfully blind to, the existence of the '176 patent since no later than December 2012.  On information and belief, since before Samsung announced Bixby 2.0 on October 18, 2017, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '176 patent, that Samsung directly infringes the '176 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

107.    Additionally, the '176 patent was cited during prosecution of one or more patents assigned to Samsung, including EP 1473964A3, US 2008/0256574A1, EP 2675147B1, and JP2013257327A.  The '176 patent was cited by the examiner during prosecution of one or more patents assigned to Samsung no later than July 20, 2011, the date it was cited during prosecution of Samsung's U.S. Patent Application Published as US 2008/0256574A1.  On information and

belief, Samsung has known of, or been willfully blind to, the existence of the '176 patent since no later than July 20, 2011.  On information and belief, since before Samsung announced Bixby 2.0 on October 18, 2017, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '176 patent, that Samsung directly infringes the '176 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

108.   Additionally, Samsung has actual notice that the Bixby 2.0 Products infringe the '176 patent at least as of the date of the filing of this Complaint.  No later than that date, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '176 patent, that Samsung directly infringes the '176 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

109.   Samsung has been and is inducing infringement of the '176 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '176 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

110.   Samsung has been and is continuing to contributorily infringe the '176 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '176 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0

31

Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

111.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '176 patent to the extent that any patented article is subject to a duty to mark.

112.    Samsung's infringement has been, and continues to be knowing, intentional, and willful.

113.    Samsung's acts of infringement of the '176 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

114.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

**COUNT 6: INFRINGEMENT OF THE '536 PATENT**

115.    VoiceBox realleges and incorporates the allegations of the preceding paragraphs of this complaint as though fully stated herein.

116.    Samsung, on its own or by conduct attributable to Samsung, has and continues to infringe the '536 patent by making, using, selling, offering for sale, and/or importing into the United States, Bixby 2.0 Products, which embody or use the inventions of the '536 patent in violation of 35 U.S.C. § 271(a).  Exemplary evidence and an exemplary chart mapping an exemplary claim (claim 38) to Bixby 2.0 Products can be found in **Exhibit L**. VoiceBox anticipates

32

identifying additional asserted claims in accordance with the case schedule and its discovery obligations.

117.    Additionally, on information and belief, Samsung knew of or was willfully blind to the existence of the '536 patent by November 11, 2014.  The ultimate parent of the '536 patent (the '176 patent) was cited during prosecution of one or more patents assigned to Samsung, including EP 1473964A3, US 2008/0256574A1, EP 2675147B1, and JP2013257327A.  The '176 patent was cited by the examiner during prosecution of one or more patents assigned to Samsung no later than July 20, 2011, the date it was cited during prosecution of Samsung's U.S. Patent Application Published as US 2008/0256574A1.  Beginning in or around September 2012 and continuing until at least mid-2013, Samsung expressed interest in licensing or purchasing some or all of the VoiceBox Patents.  By December 2012, Samsung had offered to buy the '681 patent and license the rest of the VoiceBox Patents.  The '536 patent was filed on September 3, 2013, claiming priority (through other family members) back to the '176 patent.  The application leading to the '536 patent published as U.S. Pat. Pub. No. 2014/0012577 on January 9, 2014, listing the '176 patent as a priority application.  The '536 patent issued on November 11, 2014, listing the '176 patent as a priority application.  On information and belief, since before Samsung announced Bixby 2.0 on October 18, 2017, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '536 patent, that Samsung directly infringes the '536 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

118.    No later than that date, on information and belief, Samsung has known or been willfully blind to the facts that the Bixby 2.0 Products infringe the '536 patent, that Samsung directly infringes the '536 patent, and that its actions would induce and contribute to infringement by Bixby 2.0 Products' users.

119.    Samsung has been and is inducing infringement of the '536 patent by actively and knowingly inducing others to make, use, sell, offer for sale, or import Bixby 2.0 Products that include Bixby 2.0 and embody or use the inventions claimed in the '536 patent in violation of 35 U.S.C. § 271(b).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website.

120.    Samsung has been and is continuing to contributorily infringe the '536 patent by selling or offering to sell Bixby 2.0 Products, knowing them to be especially made or especially adapted for practicing the invention of the '536 patent and not a staple article or commodity of commerce suitable for substantial non-infringing use in violation of 35 U.S.C. § 271(c).  On information and belief, Samsung writes software for Bixby 2.0 Products and designs Bixby 2.0 Products to operate in an infringing manner.  Samsung causes Bixby 2.0 Products to be made available through its own website.  On information and belief, Samsung also profits from third parties who sell Bixby 2.0 Products.  Samsung instructs users to use Bixby 2.0 Products in an infringing manner and provides technical support for such use, including on its website and through the Bixby 2.0 virtual interface.

121.    VoiceBox and its predecessors-in-interest have satisfied the marking requirements of 35 U.S.C. § 287 with respect to the '536 patent to the extent that any patented article is subject to a duty to mark.

122.    Samsung's infringement has been, and continues to be knowing, intentional, and willful.

123.    Samsung's acts of infringement of the '536 patent have caused and will continue to cause VoiceBox damages for which VoiceBox is entitled to compensation pursuant to 35 U.S.C. § 284.

124.    This case is exceptional and, therefore, VoiceBox is entitled to an award of attorney's fees pursuant to 35 U.S.C. § 285.

## DEMAND FOR A JURY TRIAL

VoiceBox demands a jury trial on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, VoiceBox, respectfully requests the Court to enter judgment in favor of VoiceBox and against Samsung as to all claims asserted herein as follows:

a. Judgment that Samsung has infringed and is infringing, directly and indirectly, the '681 patent, '765 patent, '341 patent, '699 patent, '176 patent, and '536 patent;

b. Judgment that Samsung accounts for and pay damages adequate to compensate VoiceBox for Samsung's infringement of the VoiceBox Patents, including for any infringing acts not presented at trial and pre-judgment and post-judgment interest and costs, pursuant to 35 U.S.C. § 284;

c. Judgment that Samsung has willfully infringed the '681 patent, '765 patent, '341 patent, '699 patent, '176 patent, and '536 patent and an increase in the damages award to VoiceBox of up to three times the amount assessed, pursuant to 35 U.S.C. § 284;

d. That this Court declare this case exceptional and award VoiceBox reasonable attorneys' fees and costs in accordance with 35 U.S.C. § 285;

e. That VoiceBox be granted pre-judgment and post-judgment interest on the damages;

f. An award of costs associated with bringing this action; and

g.  That VoiceBox be granted such other and further relief as the Court may deem just and

proper under the circumstances.

## JURY DEMAND

Pursuant to Federal Rules of Civil Procedure Rule 38, VoiceBox demands a trial by jury

on all issues so triable.

DATED: October 9, 2024

/s/ Theodore Stevenson, III

Theodore Stevenson, III (TX 19196650)
Brady Cox (TX 24074084)
**Alston & Bird LLP**
2200 Ross Avenue, Suite 2300
Dallas, TX 75201
Telephone: (214) 922-3400
Facsimile: (214) 922-3899
Email: ted.stevenson@alston.com
Email: brady.cox@alston.com

Erik J. Carlson (CA 265167)
Caleb Bean (CA 299751)
Srishti Ghosh (CA 354393)
(*pro hac vice application forthcoming*)
**Alston & Bird LLP**
350 South Grand Avenue, 51st Floor
Los Angeles, CA 90071
Telephone: (213) 576-1000
Facsimile: (213) 576-1100
Email: erik.carlson@alston.com
Email: caleb.bean@alston.com
Email: maddie.ghosh@alston.com

Natalie C. Clayton (NY 4409538)
**Alston & Bird LLP**
90 Park Avenue, 15th Floor
New York, NY 10016
Telephone: (212) 210-9400
Facsimile: (212) 210-9444
Email: natalie.clayton@alston.com

David Greenbaum (NY 2947455)
(*pro hac vice application forthcoming*)
**GREENBAUM LAW LLC**
210 Allison Court
Englewood, NJ 07631
Email: david@greenbaum.law

***Counsel for Plaintiff VB Assets, LLC***

36